UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| BRANDON COLE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 22-CV-1209 |
| ) | |
| WESLEY YOUNG, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## SUMMARY JUDGMENT ORDER

Plaintiff, Brandon Cole, proceeding *pro se*, brought the present lawsuit pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights by Defendants at Pontiac Correctional Center. Specifically, Plaintiff alleged excessive force by Defendants Wesley Young, Paul Blackwell, and Jacob Liles; failure to intervene by Defendants Blackwell and Liles; and deliberate indifference to a serious medical need by Defendant Sabrina Fox Drysdale.

This matter comes before the Court for ruling on Defendants' Motion for Summary Judgment (Doc. 50), to which Plaintiff filed a Response (Doc. 55) and Defendants filed a Reply (Doc. 59). For the following reasons, Defendants' Motion is GRANTED.

### MATERIAL FACTS

The following facts are taken from the proposed undisputed material facts filed by Defendants (Doc. 55 at 1-5); *see also* Local Rule 7.1(D)(1)(b) (requiring a motion for

summary judgment to include a section listing the undisputed material facts). Under Local Rule 7.1(D)(2)(b), a party opposing a motion for summary judgment must respond to the moving party's undisputed material facts and provide additional material facts, which must be supported by admissible evidence. Plaintiff has failed to do so. Under Local Rule 7.1(D)(2)(b)(6), a party's "failure to respond to any numbered fact will be deemed an admission of the fact." A district court does not abuse its discretion by strictly enforcing this rule, even against a pro se litigant. *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016); *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001). Further, the Court finds that the documents attached as exhibits to Defendants' Motion support their proposed facts.

Plaintiff is an individual within the custody of the Illinois Department of Corrections ("IDOC"). He was incarcerated at Pontiac Correctional Center ("Pontiac") on June 25, 2021.

Defendant Blackwell was a Sergeant at Pontiac, assigned to the Emergency Response Team ("ERT") during the 7 a.m. to 3 p.m. shift on June 25, 2021. Defendants Young and Liles were Correctional Officers at Pontiac, assigned to the ERT during the 7 a.m. to 3 p.m. shift on June 25, 2021. Defendant Drysdale was a Registered Nurse at Pontiac on June 25, 2021.

On June 25, 2021, at around 9:00 a.m., Plaintiff was being escorted by Defendants Blackwell, Young, and Liles from his cell to the Health Care Unit ("HCU"). Plaintiff was strapped into a chair during the escort. At this time, Plaintiff was designated as "tactical only," meaning that he was required to be escorted by ERT members. Plaintiff

was designated "tactical only" because of prior incidents where Plaintiff received disciplinary tickets for assaulting staff.

After finishing at the HCU at around 9:45 a.m., Plaintiff was escorted back to his cell by Defendants Blackwell, Young, and Liles. Defendants Young and Liles moved Plaintiff in the escort chair, while Defendant Blackwell operated a handheld camera. Upon arriving at Plaintiff's cell, Defendants Young and Liles removed the chair straps from Plaintiff and lifted him out of the chair.

As soon as Plaintiff was removed from the chair, he began to pull away from Defendants Young and Liles. Plaintiff testified in his deposition in this matter that the incident began when he "spinned on them," that is he "turned around" to face them. At that time he also "said something to them because [he] wasn't in [his] right state of mind." Plaintiff was resisting Defendants Young and Liles' attempts to move him into his cell, and Plaintiff attempted to assault them.

Defendants Young and Liles attempted to manually restrain Plaintiff against the cell door, and Defendant Blackwell administered one burst of pepper spray on Plaintiff to gain compliance. Plaintiff was then lowered to the ground on his stomach by Defendants Young and Liles. On the video recorded by Defendant Blackwell, Plaintiff is out of view of the camera for only 23 seconds, from the 2:06 to 2:29 minute marks. During that same time, Defendants Young and Liles are only out of view of the camera for two five-second periods, from 2:06 to 2:11 and 2:14 to 2:19. Approximately 26 seconds after the incident started, Defendants Young and Liles have gained control over Plaintiff, who is lying on his stomach on the floor.

When the camera is repositioned, Defendants Young and Liles are kneeling over Plaintiff, holding him on the ground while he is on his stomach. Defendants Young and Liles did not punch or elbow Plaintiff while he was on the ground, nor did they drop Plaintiff on his head on the ground.[1]

After Defendants Young and Liles regained control over Plaintiff, Liles asked Defendant Blackwell whether they should place Plaintiff back in the escort chair. Defendant Blackwell responded in the affirmative. Plaintiff was manually restrained on the ground and then lifted back into the escort chair by Defendants Young and Liles.

The entire incident, beginning when Plaintiff first pulled away from Defendants Young and Liles and ending when they placed Plaintiff back into the escort chair, lasted approximately 47 seconds.

Once Plaintiff was strapped into the escort chair, he was escorted to South Mental Health Holding Tank 106. While being escorted to the holding tank, Plaintiff was conscious and was shouting obscenities and threatening staff, describing what he would do once he was no longer restrained.

While Plaintiff was in the holding tank, he was seen by Defendant Drysdale at approximately 10:00 a.m. She evaluated Plaintiff for any injuries and observed only a slightly bloody lip. She offered to wash out his eyes, but he refused. Defendant Drysdale filled out a medical services refusal form.

---

[1] Plaintiff alleged in his Complaint (Doc. 1) that Defendants slammed him headfirst into the floor, knocking him unconscious, during which Defendant Young punched and elbowed him in the face while other Defendants held him down and sprayed him with pepper spray. *See also* Merit Review Order (Doc. 10 at 1-2).

Plaintiff received and was found guilty on a disciplinary ticket for attempted assault due to the incident with Defendants Blackwell, Young, and Liles on June 25, 2021.

## LEGAL STANDARD

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.*; *Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a court's "favor toward the nonmoving party does not extend to drawing inferences that are only supported by speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010) (internal quotations omitted). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Anderson*, 477 U.S. at 248.

## ANALYSIS

### I. Excessive Force Claim

To succeed on his excessive force claim, Plaintiff must show that the force used by Defendants was applied maliciously and sadistically, not in a good faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). When using force, prison officials must take into account "the very real threats th[at] unrest presents to inmates and prison officials" while also considering "the possible harms to inmates against whom force might be used." *Id.* at 320. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992), *quoting Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Defendants assert that the need for the use of force during the incident in question was apparent because Plaintiff was actively resisting being placed back into his cell and appeared to be attempting another staff assault. Defendants maintain that they used only a small amount of force, for a matter of seconds, in order to maintain security and regain control. Plaintiff argues that he could not have been a real threat to Defendants because he was handcuffed and restrained with leg shackles during the incident. Plaintiff also suggests that Defendant Blackwell moved the handheld camera off of Plaintiff's face, so that it would not show that he had been knocked unconscious.

The Court must consider several factors to determine if an official exerted force in a good faith effort to maintain or restore discipline, or if the official did so maliciously and sadistically to cause harm. *Whitley*, 475 U.S. at 320-21. These factors

include: (1) the need for application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury; (4) the threat reasonably perceived by the responsible official; and (5) any efforts made to temper the severity of a forceful response. *Id*. at 321.

Considering these factors in light of the undisputed record at summary judgment, no reasonable jury could find that Defendants' use of force against Plaintiff was done maliciously, for the purpose of causing harm. Rather, all evidence supports that the force was applied in a good faith effort to restore and maintain discipline.

Both the video and Plaintiff's own admissions in his deposition establish that Defendants reasonably perceived a threat when Plaintiff began resisting as soon as Defendants released him from the escort chair restraints. He pulled away from Defendants Young and Liles and spun around to face them. He admitted that he "wasn't in [his] right state of mind." Defendants also reacted to Plaintiff's actions with the knowledge that he was designated as "tactical only" because of prior incidents where Plaintiff had assaulted staff.

The undisputed facts also establish that Defendants used minimal force in responding to the safety threat posed by Plaintiff. *See, e.g., Beshears v. Winters*, 2011 WL 165188, at *7-8 (C.D. Ill. Jan. 18, 2011) (finding that arm-bar and take-down maneuvers were not excessive and constituted only de minimis use of force when the "[p]laintiff was taken from a point of active aggressiveness to no resistance in a matter of moments"). Defendant Blackwell administered just one burst of pepper spray on Plaintiff, in an attempt to gain compliance. *See Musgrove v. Detella*, 74 F. App'x 641, 645

(7th Cir. 2003) ("The use of mace violates the Eighth Amendment only if it is used 'in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain.'"), *quoting Soto v. Dickey*, 744 F.2d 1260, 1270-71 (7th Cir. 1984).  Plaintiff was then *lowered* to the ground, on his stomach, by Defendants Young and Liles.  "A takedown can be an appropriate intervention to gain compliance over a [plaintiff] who refuses to be subdued while standing." *Joshua v. Wachholz*, 2023 WL 3040641, at *5 (W.D. Wis. Apr. 21, 2023), *citing Johnson v. Rogers*, 944 F.3d 966, 969 (7th Cir. 2019) (collecting cases for the proposition that it may be reasonable for an officer to use a takedown maneuver in the face of even mild resistance).

      Defendants did not drop Plaintiff on his head on the ground, or punch or elbow Plaintiff.  Although Plaintiff *speculates* that Defendants assaulted him with punches after he lost consciousness, a court's "favor toward the nonmoving party does not extend to drawing inferences that are only supported by speculation or conjecture." *Singer*, 593 F.3d at 533 (7th Cir. 2010).  Moreover, the record itself contradicts Plaintiff's contention that he lost consciousness, as the video shows that Plaintiff was conscious and shouting threats and obscenities as he was being escorted to the holding tank just seconds after the incident. *See Scott v. Harris*, 550 U.S. 372, 378-81 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *see also Boyd v. Pollard*, 621 F. App'x 352, 355-56 (7th Cir. 2015) (upholding summary judgment on prisoner's excessive force claim despite some gaps in video footage).

For these reasons, Defendants Blackwell, Young, and Liles are entitled to summary judgment in their favor on Plaintiff's excessive force claim.

### II. Failure to Intervene Claim

A claim for failure to intervene fails when there is no underlying constitutional violation. *See Gill v. City of Milwaukee*, 850 F.3d 335, 343 (7th Cir. 2017), *citing Leaf v. Shelnutt*, 400 F.3d 1070, 1093 (7th Cir. 2005). Because Plaintiff's excessive force claim does not survive summary judgment, there was no underling constitutional violation that could give rise to liability for failure to intervene.

For these reasons, Defendants Blackwell and Liles are entitled to summary judgment in their favor on Plaintiff's failure to intervene claim.

### III. Deliberate Indifference to Medical

To establish a constitutional violation for deliberate indifference to a serious medical need, Plaintiff must show (1) he had an objectively serious medical need, and (2) Defendant Drysdale was deliberately indifferent to that need. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).

That is, Plaintiff must show that Defendant "actually knew of and disregarded a substantial risk of harm." *Petties*, 836 F.3d at 728. A substantial risk of harm is one in which the risk is "so great" that it is "almost certain to materialize if nothing is done." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (internal citations omitted). "[T]he conditions presenting the risk must be 'sure or very likely to cause…needless suffering,' and 'give rise to sufficiently imminent dangers.'" *Id., quoting Baze v. Rees*, 553 U.S. 35, 50 (2008) (plurality opinion).

Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987); *see also Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) ("[M]ere negligence" or even civil "objective recklessness" simply "is not enough."). Deliberate indifference "approaches intentional wrongdoing," and "[t]he Supreme Court has compared the deliberate indifference standard to that of criminal recklessness." *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012), *citing Farmer*, 511 U.S. at 837 (internal citations removed).

"Exposure to pepper spray is not a serious medical need, but even if it were, defendant[ ] did not disregard it." *Bonnin v. Eau Claire County*, 2004 WL 67478, at *4 (W.D. Wis. Jan. 13, 2004); *see also Boyce v. McKnight*, 2015 WL 8778330, at *10 (N.D. Ill. Dec. 15, 2015) (collecting cases). Defendant Drysdale offered to wash out Plaintiff's eyes, as documented with a medical services refusal form, but Plaintiff refused. Defendant cannot be held liable for disregarding an alleged medical need for which Plaintiff refused treatment.

As to Plaintiff's other alleged injuries to his head or face, as discussed above the record contradicts Plaintiff's allegation that he was knocked unconscious and suffered punches to his head. While being escorted to the holding tank immediately following the incident, Plaintiff was conscious and was shouting threats and obscenities. In addition, exhibits filed by Plaintiff himself show that he had been complaining of a head injury *prior* to the incident at issue in this lawsuit. An evaluation by a mental health provider on the very next day, June 26, 2021, described Plaintiff's report of

headaches that he believed were related to a head injury he had incurred two weeks prior. (Doc. 55 at 52). In another mental health provider's evaluation notes from August 31, 2021, Plaintiff complained that he had been attempting to receive medical care for over 3 months, i.e., prior to the incident with Defendants in this case. (Doc. 55, at 50).

And on the date of the incident itself Defendant Drysdale promptly evaluated Plaintiff for injuries while he was still in the holding tank, just minutes after the incident. Defendant Drysdale observed only a bloody lip. The Seventh Circuit has held that injuries such as a split lip and swollen cheek do not rise to the level of an objectively serious medical need. *Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006).

In short, there is no evidence at summary judgment that Defendant Drysdale showed something approaching total unconcern for Plaintiff's welfare in the face of serious risks. *See Rasho*, 22 F.4th at 710. Plaintiff's unsupported assertion that Defendant Drysdale musth have lied on the medical report is insufficient. *See Dawson v. Brown*, 803 F.3d 829, 834 (7th Cir. 2015) (Plaintiff "is only entitled to *reasonable* inferences from the facts presented, not those only supported by speculation or conjecture." (emphasis in original)).

For these reasons, Defendant Drysdale is entitled to summary judgment in her favor on Plaintiff's deliberate indifference claim.

**IT IS THEREFORE ORDERED THAT:**

1. **Defendants' Motion for Summary Judgment [50] is GRANTED. Judgment shall enter in Defendants' favor on all claims.**

2. If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues Plaintiff wishes to present on appeal, to assist the Court in determining whether the appeal is taken in good faith. See Fed. R. App. P. 24(a)(1)(c); see also *Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal. If the Court allows him to proceed on appeal in forma pauperis that finding would allow Plaintiff to pay the appellate filing fee over time but would not release him from having to pay the fee.

3. This case is terminated.

ENTERED this 3rd day of September, 2024.

s/ *Joe Billy McDade*  
JOE BILLY McDADE  
SENIOR U.S. DISTRICT COURT